UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: MARILYN B. CAVANAUGH, No. 20-10485-j13

Debtor.

**<u>MEMORANDUM OPINION AND ORDER REGARDING
DEBTOR'S OBJECTION TO CITIMORTGAGE, INC.'S CLAIM</u>**

Debtor Marilyn B. Cavanaugh objected to the claim of CitiMortgage, Inc. ("CitiMortgage") on grounds that CitiMortgage unreasonably and unnecessarily incurred pre-petition attorneys' fees and court costs which should not be included in its allowed secured claim. *See* Objection to Claim of CitiMortgage (Claim #9) ("Claims Objection")–Doc. 29. Debtor requests the Court to allow CitiMortgage's claim in the reduced amount of $150,661.02, which would result in a pre-petition arrearage of $19,883.19 to be cured through Debtor's chapter 13 plan. The Court held a final, evidentiary hearing on the Claims Objection on December 15, 2020 and took the matter under advisement. For the reasons explained below, the Court will sustain the Objection to Claim, in part.

FACTS AND PROCEDURAL HISTORY

In February of 2007, Debtor's then husband, Richard Keith Cavanaugh, executed a Note in favor of CitiMortgage in the principal amount of $114,000 (the "Note"). *See* Exhibit 2. Debtor did not execute the Note. *Id.* The Note is secured by a Mortgage on real property located at 21 Castlerock Rd SE, Rio Rancho, New Mexico ("Property"). *See* Exhibit 1. The Mortgage identifies Marilyn Cavanaugh and Richard Keith Cavanaugh as the borrowers. *Id.* The Mortgage includes a provision entitling CitiMortgage to recover its attorneys' fees and other fees, including property inspection and valuation fees, incurred in protecting its interest in the event of a default. *See* Mortgage, ¶ 14. That provision provides:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Agreement, including but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Agreement or by Applicable Law.

*See* Exhibit 1.

The Mortgage provides that it is "governed by federal law and the law of the jurisdiction in which the Property is located." *Id.* at ¶ 16. Debtor and Mr. Cavanaugh signed the Mortgage. *Id.*

Debtor and Mr. Cavanaugh dissolved their marriage in 2012. *See* Stipulated Final Decree of Dissolution of Marriage–Exhibit 4. As part of the marriage dissolution proceedings, Mr. Cavanaugh conveyed the Property to Debtor by quitclaim deed.[1] Debtor continues to live in the Property as her principal residence. After Debtor acquired the Property from her former husband, Debtor obtained two loan modifications from CitiMortgage, one in 2014, and one in 2017. *See* Exhibit 5. The signature blocks on both loan modifications identify Debtor as "Non-Borrower, acknowledge Modification Agreement but do not assume any personal liability on the Note." *Id.*

The loan to CitiMortgage was in default as of April 2019. In November of 2019, Debtor called CitiMortgage's loan servicer, Cenlar FSB ("Cenlar") to request a reinstatement quote for the loan. Debtor testified that she does not recall making that call, but a Consolidated Notes Log ("Log") maintained by Cenlar shows that it received a call on November 25, 2019 and provided an "authorized party" with a "TAD $15,008.08." *See* Exhibit 10. "TAD" means total amount due. *Testimony of Chad Parish, litigation associate senior at Cenlar.* The Log includes the following

---

[1] The quitclaim deed is not in evidence, but CitiMortgage stipulated that Debtor acquired the Property from her former husband by quitclaim deed in 2012 or 2013.

entry on November 25, 2019: "informed appeal denied on 9/22/19 gave reason asked her to hold rev other programs denied sent." Log–Exhibit 10. Debtor is the only authorized third party on this loan. *Testimony of Chad Parish.* Other entries on 11/25/19 reflect that the customer "hung up while on hold," "customer hung up," and "discussed loss mit." Log–Exhibit 10. This evidence, taken as a whole, establishes that Debtor obtained a reinstatement quote of $15,008.08 from CitiMortgage in November of 2019.² Debtor did not have funds available in November of 2019 to pay the reinstatement amount in full.

CitiMortgage filed a complaint to foreclose its interest in the Property on December 31, 2019. Approximately three months later, Debtor filed a voluntary petition under chapter13 of the Bankruptcy Code on March 2, 2020. *See* Doc. 1. Debtor filed a chapter 13 plan ("Plan") on the same date. *See* Doc. 5. Debtor's plan provides for monthly payments of $400.00 for a period of 60 months and proposes to cure the arrears owed to CitiMortgage in the estimated amount of $19,000 through the Plan and to pay the regular monthly mortgage payments directly to CitiMortgage outside the Plan. *Id.* CitiMortgage objected to confirmation of the Plan, asserting that the total arrears is greater than the amount Debtor estimated in the Plan and that the Plan is not feasible. *See* Doc. 19. The Plan has not yet been confirmed.

CitiMortgage timely filed a proof of claim on May 11, 2020 asserting a secured claim of $154,682.26. *See* Claim No. 9. The proof of claim states that the amount necessary to cure any default as of the petition date is $23,904.43. *Id.* The Mortgage Proof of Claim Attachment lists pre-petition fees and costs due in the amount of $4,374.74. *Id.* Of that amount, $195.00 is attributable to property preservation fees, $1,379.74 is attributable to attorneys' costs, and $2,800.00 is attributable to attorneys' fees. *Testimony of Chad Parish.*

---

² Debtor's Objection to Claim recites that Debtor's counsel sent a letter to Cenlar in November of 2019 requesting a reinstatement quote, but did not get a response as of February 12, 2020.

Invoices from Five Brothers Default Management Solutions reflect that it conducted fourteen drive-by inspections of the Property between November 2018 and March of 2020 at a cost of $16.25 per inspection. *See* Exhibit 8. The Mortgage Proof of Claim Attachment attached to CitiMortgage's proof of claim itemizes twelve property preservation charges of $16.25 each, for a total of $195.00. *See* Exhibit 7.

Invoices documenting CitiMortgage's attorneys' fees and costs (the "Attorney Invoices") reflect total pre-petition attorneys' fees and costs in the amount of $4,179.74. *See* Exhibit 8. The Attorney Invoices are presented in five columns, labeled Type, Incurred, Rec, Detail, and Amount. There are twenty-two rows reflecting twenty-two entries in each column. Examples of entries in the column entitled "Type" are: Attorney Foreclosure Fee, Lis Pendens Recording, E-File, E-File Convenience Fee, Title Search, Service of Process, Skip Trace, Recording, and NM Gross Receipts Tax. Except for the word "Description," twenty-one of the twenty-two entries in the column entitled "Detail" are completely redacted so that description of the work performed or cost incurred is not visible and is not in evidence. *Id.* CitiMortgage's witness, Chad Parish, testified that the invoices were redacted for "confidentiality purposes." However, the nature and extent of the redactions belies that testimony. The one entry in the column entitled "Detail" that actually contains any unredacted detail is an entry dated December 31, 2019 with the description "Milestone fees to 50% of $4000-complaint filed." The entries in the corresponding columns entitled "Type" and "Amount" are "Attorney Foreclosure Fee" and $2,000, respectively." There is also a charge of $157.50 for New Mexico gross receipts tax on that fee charge. *Id.*

CitiMortgage's foreclosure attorneys may charge fees up to a certain percentage when certain milestones are met in the foreclosure process. *Testimony of Chad Parish*. In addition to the attorney fee charged on December 31, 2019, CitiMortgage's attorneys billed an "Attorney

Foreclosure Fee" of $800, plus associated New Mexico gross receipts taxes of $63.00 on February 24, 2020. *Id.* There is no evidence of what milestone was reached before that fee was charged.

The pre-petition mortgage arrears, exclusive of fees and costs, is $19,529.69.[3] The Attorney Invoices reflect the following fees and costs:

| Invoice Date | Fees Charged |
|---|---|
| 12/31/19 | $2,567.55 |
| 02/05/20 | $39.00 |
| 03/02/20 (for work performed in February 2020) | $1,463.19 |
| 03/09/20 (for work performed in February 2020) | $110.00 |
| TOTAL: | $4,179.74 |

*See* Exhibit 8.

CitiMortgage seeks total pre-petition fees and costs in the amount of $4,374.74, including $195.00 in property preservation charges.

Debtor objected to CitiMortgage's claim on June 19, 2020. *See* Doc. 29. In response, CitiMortgage filed a Notice of Withdrawal of Secured Creditor CitiMortgage, Inc., its Assignees and/or Successors, by and through its Servicing Agent Cenlar FSB' Proof of Claim Dated May 11, 2020 ("Notice of Withdrawal") on July 8, 2020. *See* Doc. 31. CitiMortgage also filed a Motion for Order Allowing Withdrawal of CitiMortgage, Inc.'s Proof of Claim dated May 1, 2020 Pursuant to Bankruptcy Rule 3006 ("Motion to Allow Withdrawal of Claim"). *See* Doc. 33. The Motion to Allow Withdrawal of Claim asserts that CitiMortgage's proof of claim was filed in error and that it should be allowed to withdraw its proof of claim because Debtor did not sign the Note. *Id.*

---

[3]The Proof of Claim shows total pre-petition arrears of $23,904.43, which includes pre-petition fees and costs of $4,374.74. *See* Exhibit 7. $23,904.43 – 4,374.74 = $19,529.69.

Debtor then filed a Motion to Strike Notice of Withdrawal of Secured Creditor CitiMortgage, Inc.; its Assignees and/or Successors, by and through its servicing Agent Cenlar FSB's Proof of Claim dated May 11, 2020 (Docket #31); and Objection to Motion for Order Allowing Withdrawal of CitiMortgage, Inc.'s Proof of Claim dated May 1, 2020 Pursuant to Bankruptcy Rule 3006 (Docket #33) ("Motion to Strike"). Debtor asserted that allowing CitiMortgage to withdraw its proof of claim would prejudice Debtor. *See* Docket 36.

At the final hearing held December 15, 2020, CitiMortgage orally withdrew its Motion to Allow Withdrawal of Claim. The Court granted the Debtor's Motion to Strike. *See* Doc. 60.

## DISCUSSION

A. *Debtor Can Address CitiMortgage's Claim Through a Chapter 13 Plan*

As a threshold matter, CitiMortgage contends that Debtor cannot cure the mortgage arrears through a chapter 13 plan because she is not obligated under the Note. This Court disagrees. Debtor is currently the sole owner of the Property. Even though Debtor is not obligated under the Note, CitiMortgage nevertheless holds an in rem claim against the Debtor's Property. As explained by the Supreme Court in *Johnson v. Home State Bank*, 501 U.S. 78, 87. 111 S. Ct. 2150, 2155, 115 L.Ed.2d 66 (1991), 11 U.S.C. § 102(2) defines "claim against the debtor" to "include[] claim against property of the debtor[,]" which is broad enough to "extend to all interests having the relevant attributes of nonrecourse obligations regardless of how these interests come into existence." Consequently, even though Debtor has no liability under the Note, and CitiMortgage's claim is the equivalent of a nonrecourse claim against the Debtor, Debtor can address CitiMortgage's in rem claim through a chapter 13 plan. *Johnson v. Home State Bank,* 501 U.S. at 80 (holding that a debtor can include a mortgage lien in a chapter 13 plan

even after the debtor has discharged any personal liability on the debt secured by the property in a prior chapter 7 case).

  B. *CitiMortgage has Failed to Establish that all the Requested Attorneys' Fees and Expenses are Properly Included in its Allowed Secured Claim*

A timely filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a); *see also In re Harrison*, 987 F.2d 677 (10th Cir. 1993) ("[A] proper claim timely filed stands, absent objection.") (quoting *In re Padget*, 119 B.R. 793, 798 (Bankr. D. Colo. 1990)). In addition, per Fed.R.Bankr.P. 3001(f), a properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." Fed.R.Bankr.P. 3001(f); *see also In re Penaran*, 424 B.R. 868, 875 (Bankr. D. Kan. 2010) ("Because a claim is deemed allowed unless objected to under § 502, a rebuttable presumption of the claim's validity arises upon filing.") (citing Fed.R.Bankr.P. 3001(f)).[4] Once an objection to claim is filed, after notice and a hearing, the Court determines the amount of the allowed claim, if any, as of the petition date. 11 U.S.C. § 502(b).

The burden of proof in a claims objection contested matter is a shifting one. "The objecting party has the burden of going forward with evidence supporting the objection." *In re Geneva Steel Co.*, 260 B.R. 517, 524 (10th Cir. BAP 2001), *aff'd,* 281 F.3d 1173 (10th Cir. 2002). "Such evidence must be of probative force equal to that of the allegations contained in the proof of claim." *Id.* "If the objecting party produces facts sufficient to demonstrate that an actual dispute regarding the claim's validity or amount exists, the burden of proof shifts to the claimant

---

[4] *See also In re Snow*, 603 B.R. 114, 120 (Bankr. W.D. Okla. 2019) (explaining that Fed.R.Bankr.P. 3001(c)(2) requires the claimant to include with its proof of claim an "itemized statement of the interest, fees, expenses, or charges" if the creditor includes such amounts in addition to principal, and that creditor's break down of its total claim to reflect separate categories and subtotals for principal, interest, charges, and collection costs in its proof of claim satisfied the requirements of Fed.R.Bankr.P.(c)(2) entitling creditor to the evidentiary presumption of prima facie validity).

to prove in what amount its claim should be allowed." *Penaran*. 424 B.R. at 875 (citations omitted). An objection that raises only legal issues is also sufficient. *In re Broadband Wireless Intern. Corp.*, 294 B.R. 140, 145 (10th Cir. BAP 2003). In other words, once the objecting party raises a sufficient legal or factual basis to question the validity or amount of the creditor's claim, the creditor bears the ultimate burden of persuasion for the allowance of its claim. *Allen,* 260 B.R. at 524 ("Once the objecting party has reached this threshold, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim.") (citing *Harrison*, 987 F.2d at 680).

Debtor does not contest that the Mortgage entitles CitiMortgage to recover from Debtor its attorneys' fees and costs incurred "in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property. .. ." Mortgage, ¶ 14.[5] Instead, Debtor contends that CitiMortgage's attorneys' fees are unnecessary and unreasonable on two grounds.[6]

First, Debtor asserts CitiMortgage's fees are unnecessary because it should not have incurred attorneys' fees to pursue a foreclosure action when it knew that Debtor was asking for a reinstatement amount. This is an insufficient ground to disallow the requested attorneys' fees and costs. A creditor need not forbear from initiating foreclosure proceedings simply because a

---

[5] *See also LPP Mortg. Ltd. v. Worldwide Christian Aid, Inc.*, No. CV 14-0367 RB/CG, 2016 WL 10538011, at *3 (D.N.M. Apr. 1, 2016) (determining, under New Mexico law, that the mortgage holder was entitled to recover its reasonable attorneys' fees and expense under the contractual provision in the mortgage).

[6] Debtor did not assert in the Claims Objection that CitiMortgage's attorneys' fees and costs were unreasonable because its proof of claim failed to provide sufficient detail of the work performed. Nevertheless Debtor raised such arguments and presented evidence in support of those arguments that was admitted at the final hearing without objection. The Court, consistent with Fed.R.Bankr.P. 7015 and Fed.R.Bankr.P. 9014, deems the Objection to Claim amended to conform to the evidence presented at the final hearing. *See Smith v. Cooper (In re Cooper)*, 399 B.R. 637, 645 (Bankr. E.D. Ark. 2009) ("The Bankruptcy Rules allow the Court, *sua sponte,* to permit pleadings to be amended to conform to the proof when the issues are tried by the implied consent of the parties and no objection is raised to the introduction of evidence of the unpleaded facts.") (citations omitted); *In re Ginko Assocs., L.P.*, No. 05-19436bf, 2008 WL 3200713, at *1 n. 1 (Bankr. E.D. Pa. Aug. 5, 2008) (conforming the pleadings to the evidence is permitted by Fed.R.Civ.P. 15(b)(2), made applicable to adversary proceedings by Fed.R.Bankr.P. 7015, "which itself can be incorporated into contested matters under Fed.R.Bankr.P. 9014(c).").

debtor has requested a reinstatement amount or has suggested to the creditor that the debtor wants to cure mortgage arrears through an anticipated chapter 13 bankruptcy case.

Second, Debtor asserts that the Attorney Invoices contain insufficient information to demonstrate that the requested fees are reasonable. Debtor established through cross-examination that the Attorney Invoices contain so many redactions that CitiMortgage's witness could not say for sure what the charges were for. Moreover, CitiMortgage's witness could not explain why the invoices were heavily redacted, other than to suggest the descriptions were redacted for "confidentiality purposes." The redactions include complete redactions of numerous descriptions related to such things as e-filings and mailings. Based on this evidence, the Court finds that Debtor has established a genuine factual dispute regarding CitiMortgage's claimed attorneys' fees and costs sufficient to shift the burden to CitiMortgage to prove the reasonableness of its charges for attorney's fees and costs.

The reasonableness of CitiMortgage's claimed attorneys' fees and costs is determined under applicable federal law and New Mexico law, as provided in the Mortgage. *See* Mortgage, ¶ I (defining "Applicable Law" as "all controlling applicable federal, state and local statutes. .. ."); Mortgage ¶ 16 (providing that the mortgage "shall be governed by federal law and the law of the jurisdiction in which the Property is located."). Section 1322(e) of the Bankruptcy Code provides, "if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e).[7] Debtor's plan proposes to cure pre-petition arrears due CitiMortgage. The Court will, therefore, apply New Mexico law.

---

[7] *See also In re Alvarez*, 458 B.R. 645, 652 (Bankr. D.P.R. 2011) (concluding that the court must apply 1322(e), requiring determination in accordance with the underlying agreement and applicable non-bankruptcy law, to establish the amount of the pre-petition arrearages, including pre-petition attorneys' fees, and applying Puerto Rico law); *see also In re Gordon-Brown*, 340 B.R. 751 (Bankr. E.D. Pa.2006) (applying Pennsylvania law to determine

-9-

Under New Mexico law, though limited by the contract attorneys' fee provision, the Court nevertheless has broad discretion when awarding fees. *Fort Knox Self Storage, Inc. v. W. Techs., Inc.*, 2006-NMCA-096, ¶ 29, 140 N.M. 233, 240, 142 P.3d 1, 8, *as corrected* (Aug. 29, 2006) (citation omitted). Further, "[t]he allowance of a fee may be reduced if it is determined to be unreasonable or excessive." *Thompson Drilling, Inc. v. Romig*, 1987-NMSC-039, ¶ 23, 105 N.M. 701, 706, 736 P.2d 979, 984 (citation omitted). Factors considered under New Mexico law to assess the reasonableness of an attorneys' fee award include:

> (1) the time and labor required—the novelty and difficulty of the questions involved and skill required;
> (2) the fee customarily charged in the locality for similar services;
> (3) the amount involved and the results obtained;
> (4) the time limitations imposed by the client or by the circumstances; and
> (5) the experience, reputation and ability of the lawyer or lawyers performing the services.

*Thompson Drilling Inc. v. Romig*, 1987-NMSC-039, ¶ 20, 105 N.M. at 705, 736 P.2d at 983.

CitiMortgage failed to support its attorneys' fees and costs with sufficient evidence from which the Court can effectively evaluate these factors. There is no evidence to suggest the foreclosure process was atypical of other New Mexico foreclosure proceedings of residential properties or that it involved any novel or difficult questions. The evidence suggests that CitiMortgage had a flat fee arrangement with its foreclosure counsel in this case, which entitled its attorneys to charge a percentage of the fee upon reaching certain milestones in the foreclosure process. However, CitiMortgage presented no evidence of customary flat fees charged in New Mexico for routine residential foreclosure proceedings.[8] In addition, the heavily redacted Attorney Invoices prevent the Court from evaluating the nature of the work performed or the

---

amount of pre-petition fees to be included in mortgage holder's claim); *In re Plant*, 288 B.R. 635, 642 (Bankr. D. Mass. 2003) (applying Massachusetts law).

[8] *See In re Covemaker*, No. 10-83747, 2011 WL 2020856, at *1 (Bankr. C.D. Ill. May 23, 2011) ("[E]ven flat fee arrangements must be evaluated for reasonableness on the basis of time expended.").

costs charged. For example, the description of an $800.00 "Attorney Foreclosure Fee" is completely redacted. With no further explanation of the work performed, such fee cannot be included in CitiMortgage's allowed claim. CitiMortgage's explanation that the descriptions on the invoices were redacted for "confidentiality purposes" is wholly unsatisfactory. The Court has reviewed hundreds of attorney invoices without the type of wholesale redacting made by CitiMortgage. There is no unredacted explanation for "statutory mailings," "E-filings," or "E-file convenience fee" in the Attorney Invoices or through testimony. The description for the itemized expense for "Skip Trace" in the amount of $110.00 is likewise completely redacted, with no further explanation given. A reduction in the requested attorneys' fees and costs is warranted.

Nevertheless, the contractual provision in the Mortgage entitles CitiMortgage to recover a portion of its attorneys' fees and costs, as well as other "property preservation" costs in protecting its interest in the Property upon Debtor's default. In exercising its discretion in light of the relevant reasonableness factors, and the Court's own experience,[9] the Court has determined that CitiMortgage has presented sufficient evidence for the Court to conclude that the following fees and costs are reasonable and properly included in CitiMortgage's allowed claim:

| Type | Date | Amount |
|---|---|---|
| Title Search | 12/5/2019 | $265.00 |
| Attorney Foreclosure Fee–Milestone fees to 50% of $4000-complaint filed | 12/31/2019 | $1,000.00[10] |
| NM Gross Receipts Tax | 12/31/2019 | $78.75 |
| Lis Pendens Recording | 1/10/2020 | $25.00 |
| Service of Process ($540.00 reported charge is excessive) | 2/27/2020 | $200.00 |
| TOTAL: | | $1,568.75 |

---

[9] *See Calderon v. Navarette*, 1990-NMSC-098, ¶ 10, 111 N.M. 1, 3, 800 P.2d 1058, 1060 ("[T]he Court may also apply its own knowledge and expertise regarding the nature of the services rendered. .. to calculate the value of the fee.").

[10] The Court reduced the flat fee charged in this fee entry by 50% because CitiMortgage presented no evidence regarding customary flat fees charge for this type of work in the community for comparable services, any specifics about what the attorneys actually did to earn the fee, or the number of hours worked.

The Court will also allow the "property preservation" costs as supported by the invoices from Five Brothers Default Maintenance Solutions in the amount of $195.00. Debtor did not specifically contest those costs, and the Court finds them to be reasonable and authorized under the terms of the Mortgage.

WHEREFORE, IT IS HEREBY ORDERED that the Objection to Claim is sustained, in part. CitiMortgage's allowed secured claim is limited to $152,071.27, including pre-petition attorneys' fees and costs of $1,568.75, and property preservation costs of $195.00, resulting in a pre-petition arrears of $21,293.44 which may be cured through Debtor's chapter 13 plan.[11] The remainder of CitiMortgage's claim is disallowed.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: February 9, 2021

COPY TO:

Jason C Bousliman
McCarthy & Holthus, LLP
6501 Eagle Rock NE, Suite A-3
Albuquerque, NM 87113

Tiffany M. Cornejo
Chapter 13 Trustee
625 Silver Avenue SW, Suite 350
Albuquerque, NM 87102

Joel Alan Gaffney
Gaffney Law, PC
PO Box 3460
Albuquerque, NM 87190

---

[11] CitiMortgage's total claim of $154,682.26 less claimed pre-petition fees and costs of $4,374.74 = $150,307.52 + allowed attorneys' fees and costs of $1,568.75 + property preservation fees of $195.00 = $152,071.27, the total allowed claim. CitiMortgage's claimed pre-petition arrears of $23,904.43, less the requested attorneys' fees and costs of $4,374.74 = $19,529.69 + allowed attorneys' fees and property preservation costs of $1,763.75 = $21,293.44, the total allowed pre-petition arrears.